Covington, et al. *v.* Carney, Exrx., et al.

No. 42074          December 4, 1961          135 So. 2d 192

*Russell Wright,* Meridian, for appellants.

*Gipson, Gipson & Wiley,* Meridian, for appellees.

Lee, P. J.

This was a bill by Mrs. Nannie Malone Covington and husband, Roy, and G. M. Carmichael against Mrs. Lillian Carney, Executrix of the Last Will and Testament of Gabe Carney, Deceased, and the Trustee under the deed of trust there involved. It was a lengthy pleading; but stripped of the nonessentials and embellishments, it charged in effect that about November 5, 1959, Mrs. Covington entered into a contract with Paul E.

Gandy, whereby she agreed to purchase three vegetable cases for the sum of $3,500, with $557 being paid cash and the balance to be paid to some bank at the rate of $75 per month; that Gandy also represented that he had a valid lease on the whole building and would transfer his rights to the store part for which Mrs. Covington would pay $100 per month; that Gandy denied that anyone else had an interest in the vegetable cases; that the deal, in its entirety, was consummated, but Gandy, in the assignment of his rights to the store, through mistake, inserted the name of Roy Covington instead of Mrs. Covington; that this error was corrected, but that on December 2, 1959, Gabe Carney informed Mrs. Covington that there was an unpaid balance of $3,000 due to him by Paul E. Gandy which was secured by a chattel mortgage on the vegetable cases, and that he wanted his money; that this alleged lien thereon was wholly unknown to the Covingtons; that Carney proposed that, if Roy Covington would sign a note with Mrs. Covington to pay the indebtedness of $90 per month, he could get the papers refinanced and would be enabled to get his money; that, since Gandy had misrepresented the matter both as to the lien and the lease to them, the Covingtons got in touch with him and sought to return the cases, have the money which they had paid refunded to them, and call the deal off; that Gabe Carney then, in the presence of Paul Gandy, took Gandy's purported five-year lease, explained it to the Covingtons, represented that it was valid and that its assignment was valid; that, as a result of such representations by Carney, assented to by Gandy, the Covingtons procured the aid of G. M. Carmichael and the three of them signed the note and chattel deed of trust for $3,000, payable $90 per month; that all of this was done in reliance on the statement and representation of Carney that Mrs. Covington had a valid lease on the store until May 1964; that Carney, instead of taking the papers to a bank and

getting his money, deposited the same for collection; that Gandy in fact never had a five-year lease on the store or a lease for any period thereon; that the title was in William B. Compton and Dewey M. Sadka; that on July 4, 1960, Harley M. Vance, who, purportedly leased the building to Paul Gandy, and who was merely collecting rents and had no title thereto, demanded that the Covingtons vacate the building because they had no valid lease and no right to remain there longer.

The complainants charged that neither the lease nor its assignment was valid and that the Covingtons gained no rights thereby; that the representations of Carney concerning the lease were false and fraudulent; that such misrepresentations were material and were the inducement for their execution of the deed of trust and note; and that they relied upon such representations. They therefore sought cancellation of the note and deed of trust and the refund of the amount which they had paid thereon.

The response of Mrs. Carney was an answer in which she denied each and every material allegation of the bill, and prayed that her answer should be treated as a general demurrer and that it should be heard as such in advance of the trial of the cause on its merits. The answer of the trustee merely stated that he had no personal interest in the subject matter of the litigation but admitted that he was the trustee in the deed of trust in question.

Although no formal demurrer was filed, the court accepted the defendant's prayer to that effect and sustained the ''general demurrer of the defendant Mrs. William Carney filed as a part of her answer herein.'' The complainants declined to amend or plead further, the cause was dismissed, and from the decree entered, they appealed.

No point is made as to the form or sufficiency of the demurrer. ■■ ■ The appellants merely refer to the rule

that the allegations, which are well pleaded, must be taken as confessed. This is true. The principle has been so often reiterated and is so elemental that it needs no citation of authority. Actually, in the trial, the complainants may fail utterly to prove the allegations of their bill. But the court has no discretion to determine what allegation is true and what is untrue. It must accept as true every allegation which is well pleaded.

The bill undertakes to allege that the complainants signed the note and deed of trust, about which complaint is made, because Carney represented that both the five-year lease and its assignment to Mrs. Covington were valid, when in truth and in fact they were not valid; that such misrepresentation was fraudulently practiced upon them and was material in inducing them to execute the note and deed of trust.

There is some question as to whether the bill affirmatively alleges that Carney knew that the lease was not valid. But in a case such as this, where fraud and misrepresentation are charged, a demurrer should not be sustained. See Wax Lbr. Co. v. Netterville, 233 Miss. 350, 102 So. 2d 185, where the Court said:

"We think the chancellor erred in sustaining the demurrer to the bill of complaint. This case is one in which all the facts ought to have been developed under an answer. Griffith, in his Chancery Practice, says: 'In accordance with the trend of modern judicial opinion it has been definitely established as a rule by our latest cases that attempt should not be made to settle close and difficult questions of. law and right on a demurrer. If the demurrer raise merely a doubtful question or if the case be such that the cause of justice will probably be promoted by a determination of the ultimate right only on answer and proof, the court ought to exercise a fair judicial discretion to that end, although it may be that in technical point the grounds of the demurrer are sustainable in strict law.' Griffith's Mississippi Chancery

Practice, Second Edition, 1950, p. 297, Demurrers, par. 310. See also Federal Land Bank v. Fidelity & Deposit Co., 165 Miss. 715, 147 So. 917; Gully v. Bridges, 170 Miss. 891, 156 So. 511; Taylor v. Twiner, 193 Miss. 410, 9 So. 2d 644; White v. Turner, 197 Miss. 265, 19 So. 2d 825.''

Consequently, instead of holding that the bill of complaint stated no case, the court should have heard the evidence and then decided it on its merits.

Reversed and Remanded.

*Kyle, Arrington, Ethridge* and *Rodgers, JJ.,* concur.